UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| United States of America ex rel. The Tarbell Group, LLC, Plaintiff<br><br>v.<br><br>Acoaxet Club Inc., et al. | Case No. 1:24-cv-11950-LTS |

**MEMORANDUM OF LAW IN SUPPORT OF IBEW BUILDING CORPORATION'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(5) AND 12(b)(6)**

I. Introduction

In 2024, the Tarbell Group, LLC, ("Tarbell") brought a False Claims Act ("FCA") lawsuit against 120 nonprofit defendants in Massachusetts alleging that they fraudulently obtained loans under the Paycheck Protection Program ("PPP"), which Congress enacted in response to the COVID-19 pandemic. After the United States declined to intervene in the case except as to another defendant in September 2025, this Court unsealed the *qui tam* complaint and ordered that it be served.

The case should now be dismissed as to the International Brotherhood of Electrical Workers Building Corporation ("Building Corp."). Three independent grounds warrant dismissal. First, Tarbell failed to serve the Building Corp. by the December 16, 2025, deadline and has not attempted service to date. Tarbell's prolonged delay in the face of the Court's express service order in September 2025 demonstrates no good cause or equitable basis for an extension.

Second, the exact same allegations concerning the Building Corp.'s tax status, PPP loan, and alleged ineligibility were publicly disclosed in the media and by four members of Congress

in 2022, more than two years before Tarbell filed this action. Those disclosures bring the claims within the FCA's public disclosure bar. 31 U.S.C. § 3730(e)(4)(A).

Third, the amended complaint fails to plausibly allege either scienter or materiality. The Building Corp.'s tax classification and receipt of a loan do not establish that it knowingly submitted false certifications. Nor does characterizing eligibility as a condition of payment, without more, satisfy the FCA's demanding materiality standard. Tarbell's fact-free, conclusory allegations cannot supply these missing elements.

The Court should therefore dismiss the first amended complaint against the Building Corp. under Rules 12(b)(5) and 12(b)(6).

## II. Facts Relevant to the Motion to Dismiss

Solely for purposes of this motion, the Building Corp. accepts the following allegations as true.

Congress established the Paycheck Protection Program ("PPP") in 2020 through the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116-136, later amended by, among other laws, the Paycheck Protection Program Flexibility Act of 2020, Pub. L. 116-142, and the American Rescue Plan Act of 2021, Pub. L. 117-2. The Small Business Administration ("SBA") administered the PPP through private loans it guaranteed, forgave, and reimbursed to the lenders. FAC ¶ 124.

On July 26, 2024, the Tarbell Group, LLC ("Tarbell") filed this action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, against 120 Massachusetts nonprofits, alleging that they fraudulently obtained PPP loans and forgiveness. The complaint was filed under seal. Dock. 1. After a settlement with the sole defendant against which the United States intervened,

the court unsealed the complaint on September 17, 2025, and ordered service on the remaining 119 defendants. Docks. 19–21.

Tarbell filed the operative amended complaint on August 20, 2026. Dock. 24. It alleges fraud between 2020 and 2022 by a wide range of nonprofits, including civic associations, an association of police chiefs, lodges, bar associations, chambers of commerce, a beagle club, tennis clubs, cemetery associations, the Masons, veterans' associations, a union benefit fund, and trial lawyer advocates, among others.

The Building Corp. is organized under § 501(c)(2) of the Internal Revenue Code. FAC ¶ 4. On behalf of other tax-exempt entities, such entities may maintain the property they hold, including by employing personnel to perform normal building and grounds maintenance.

As with every defendant, the allegations against the Building Corp. are sparse. Beyond identifying its tax status, the complaint lists publicly available information about its 2020 PPP loan, which was forgiven in 2020. FAC p. 60. It alleges that § 501(c)(2) entities were ineligible for PPP loans until March 11, 2021, and generally alleges that loan and forgiveness applications required certifications of eligibility. FAC ¶¶ 128–30.

Count 1 alleges an FCA violation based on the Building Corp.'s first-draw loan; Count 4 alleges an FCA violation based on loan forgiveness. FAC ¶¶ 143–49, 162–69.

## III. Legal Arguments

Tarbell's claims against the Building Corp. should be dismissed on three independent grounds. First, Tarbell has yet to attempt service of process, even though Fed. R. Civ. P. 4(m) required that service be completed in December 2025. This dilatory behavior warrants dismissal under Fed. R. Civ. P. 12(b)(5). Second, the FCA's public disclosure bar applies because Tarbell simply repeats identical facts and theories of fraud that were disclosed in the media and a federal

report two years before the complaint was filed. Third, Tarbell fails to plausibly allege materiality or scienter, essential elements of adequately alleging a suit under the FCA.

A. Dismissal is appropriate because Tarbell failed to serve the Building Corp. by December 16, 2025

Service on the Building Corporation was due by December 16, 2025, but Tarbell has not even attempted service. Neither good cause nor equitable grounds justify an extension. Therefore, the amended complaint should be dismissed under Fed. R. Civ. P. 12(b)(5).

1. Tarbell failed to serve the Building Corp. by the Dec. 2025 deadline; indeed, service was not attempted

Before the District Court can "exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987); see also *Vázquez–Robles v. CommoLoCo, Inc.*, 757 F.3d 1, 4 (1st Cir. 2014) ("jurisdiction normally depends on legally sufficient service of process").

Fed. R. Civ. P. 4(m) generally requires service within 90 days after a complaint is filed, although a relator in a *qui tam* action cannot lawfully serve process until authorized by court order. *U.S. ex rel. Weiner v. Siemens AG*, 87 F.4th 157, 161–62 (2d Cir. 2023). However, the "Rule 4(m) period begins [] after a court expressly orders service." *Weiner*, 87 F.4th at 162.

This action was filed under seal on July 26, 2024. Dock. 1. On September 17, 2025, the United States notified the Court that it would intervene as to only one party, declined intervention as to the approximately 119 other defendants (including the Building Corp.), and moved to unseal the case. Dock. 1, pg. 1. That day, the Court unsealed the case, issued a summons, and ordered Tarbell to "complete one for each defendant and serve it in accordance

with Fed.R.Civ.P. 4 and LR 4.1." Docks. 20–21. Service was therefore due by December 16, 2025 (90 days following September 17).

Because no defendant had appeared for nearly 11 months after the order for service, the Court ordered the United States and Tarbell to file a joint status report. Dock. 22 (Aug. 13, 2026).[1] Tarbell's status report on August 19, 2026, stated that it had "begun the process of effecting service of process on the remaining defendants." Dock. 23, pg. 1. And yet the Building Corp. did not receive a waiver request until September 21, 2026. Shaw Aff., ¶¶ 5-7. To date, there is no indication that Tarbell has attempted service on the Building Corp.

2. Neither good cause nor equitable grounds justify an extension

Once service is challenged, the plaintiff bears the burden of proving proper service. *Rivera-Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992). If the plaintiff establishes good cause for untimely service, the court must extend the deadline; otherwise, the court may dismiss without prejudice or grant a discretionary extension. *Hewes v. Pangburn*, 162 F.4th 177, 201 (1st Cir. 2025); *Ascher v. Duggan*, 988 F. Supp. 2d 99, 103 (D. Mass. 2013); *Mazza v. City of Bos.*, 753 F. Supp. 3d 88, 99 (D. Mass. 2024).

Good cause may arise from a process server's conduct, a defendant's evasion or misleading conduct, diligent efforts to serve, mitigating circumstances, or the plaintiff's *pro se* or *in forma pauperis* status. *McIsaac v. Ford*, 193 F. Supp. 2d 382, 383 (D. Mass. 2002) (quoting 4B Fed. Prac. & Proc. Civ. § 1137 (3rd ed.)). None of those circumstances appears here. The record instead reflects Tarbell's prolonged inaction despite the Court's express order for service.

[1] The Building Corp. respectfully notes that request for a status report was at variance with the Local Rules, which required the clerk to "automatically enter an order of dismissal for failure to effect service of process, without awaiting any further order of the court…." L.R. 4.1(b).

Tarbell's belated transmission of a waiver of service does not establish good cause. Even a waiver request sent within the service period does not satisfy that standard if no waiver is received. *Bradford v. Bracken Cnty.*, 767 F. Supp. 2d 740, 754 (E.D. Ky. 2011); see also *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998). The absence of any apparent attempt at service also strongly supports dismissal. See *Figueroa v. Rivera*, 147 F.3d 77, 82–83 (1st Cir. 1998). Unexplained last-minute efforts at service cannot establish good cause. *McIsaac*, 193 F. Supp. 2d at 383–84; *Bunn v. Gleason*, 250 F.R.D. 86, 91 (D. Mass. 2008) (in a case with six-month unexplained delay, dilatory plaintiffs "bear primary responsibility for the predicament they find themselves in and are not entitled to an exemption from Rule 4's service of process requirements."); see also *Mayfield v. Chevron U.S.A. Inc.*, 2019 WL 125877, at *4 (E.D. Tex. Jan. 7, 2019) (dismissing where the plaintiff offered no reasonable explanation for a 10-month delay).[2]

The Court should also decline to grant a discretionary extension. *McIsaac* described such relief as appropriate only when requested before Rule 4(m)'s deadline. *Id.* at 384. Although *Crevier v. Town of Spencer* questioned that limitation, particularly where dismissal would bar refiling, that court granted an extension following a delay of only three days but did so "with some misgivings" No. CIVA 05-40184-FDS, 2007 WL 120237, at *5 (D. Mass. Jan. 12, 2007). Here, service is already ten months overdue, not three short days, and still no effort at service has been undertaken. A potential statute of limitations bar to refiling does not justify excusing that prolonged delay, particularly given that the Building Corp. is prejudiced by the delay of serving claims based on alleged conduct that occurred more than six and a half years ago. *Bunn*, 250

[2] Although Tarbell filed an amended complaint in August 2026, the "period provided by Rule 4(m) is not restarted by the filing of an amended complaint except as to those defendants newly added in the amended complaint." *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1148 (10th Cir. 2006). The Building Corporation was not newly added.

F.R.D. at 91 (dismissing suit under Rule 12(b)(5) even where the claims could not be refiled because "a limitations period is meant to prevent just such a loss of key evidence due to the lapse of time between a lawsuit and the events underlying it. … Thus, the potential prejudice to Haley equals or exceeds the prejudice to Plaintiffs from dismissing these claims…")

Tarbell's conduct in a similar action in the Eastern District of Tennessee underscores its dilatory approach to this litigation. In *U.S. ex rel. The Tarbell Group, LLC v. Chattanooga Area Convention and Visitors Bureau Inc., et al.*, No. 1:25-cv-110, Tarbell brought a similar FCA action and was represented by the same *pro hac vice* counsel as in Mass. The court unsealed that case and ordered service on October 2, 2025. After no return of service was filed within 90 days, the court issued an order stating "Rule 4(m) provides that a defendant must be served within 90 days after a complaint is filed—in this case, 90 days after the complaint is unsealed. See 31 U.S.C. § 3730(b)(3). Plaintiff-Relator's time to serve Defendants under Rule 4 has expired." Shaw Aff., ¶ 9, Ex A (Doc. 13), pg. 1. The court ordered Tarbell to show cause why the action should not be dismissed. *Id.* Tarbell then did make service and obtained an extension from the court, though in its motion relied on caselaw extending service for "relatively shortly" periods of days or weeks. Shaw Aff., ¶ 10, Ex. B (Doc. 21), pg. 4. But the point in this case is that even though Tarbell had notice in Tennessee that untimely service could lead to dismissal in January 2026, it nonetheless ignored this Massachusetts case for another seven months until this Court awoke Tarbell from its slumber by ordering a status report. This weighs heavily against an extension. See *Zapata v. City of New York*, 502 F.3d 192, 199 (2d Cir. 2007) (affirming denial of a discretionary service extension where the plaintiff failed to attempt timely service despite notice that the defendant remained unserved and waited until after a motion to dismiss to request an extension).

In such circumstances, if this Court were to allow Tarbell additional time, there would be nothing left to Rule 4(m)'s requirement for timely service. Dismissal pursuant to Fed. R. Civ. P. 12(b)(5) should be granted.

B. Even if Tarbell had served the complaint, it should still be dismissed on the merits

1. Overview of the False Claims Act and Standard of Review

The FCA imposes liability for knowingly presenting fraudulent claims for payment or approval, making or using false records or statements material to such claims, or causing those acts. 31 U.S.C. § 3729(a)(1)(A)–(B). That prohibition also covers records or statements material to an obligation to pay or transmit money or property to the government. *Id.* § 3729(a)(1)(G). The United States, or a private relator acting on its behalf, may bring an FCA action. *U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 579 F.3d 13, 15 (1st Cir. 2009).

A relator must plead that the defendant made false claims or statements that were material and made with scienter. *U.S. ex rel. Mackillop v. Grand Canyon Educ., Inc.*, 626 F. Supp. 3d 418, 444–45 (D. Mass. 2022) (citing *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006)). Courts strictly enforce the FCA's materiality and scienter requirements. *U.S. ex rel. Jones v. Brigham & Women's Hosp.*, 678 F.3d 72, 85 (1st Cir. 2012) (quoting *U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 388 (1st Cir. 2011)).

Under Fed. R. Civ. P. 9(b), an FCA relator must plead the alleged fraud's "who, what, when, where, and how" with particularity. *U.S. v. Exagen, Inc.*, No. 21-CV-10950-ADB, 2025 WL 959460, at *4 (D. Mass. Mar. 31, 2025) (citing *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 227–28 (1st Cir. 2004); quoting *U.S. ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116, 123 (1st Cir. 2013)).

To survive dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts to state a facially plausible claim; labels, conclusions, and formulaic recitations of the elements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts well-pleaded facts as true and draws reasonable inferences in the plaintiff's favor, but those facts must support more than a mere possibility of misconduct. *Id.* at 678–79; *Duke v. Community Health Connections, Inc.*, 355 F. Supp. 3d 49, 54 (D. Mass. 2019). Plausibility depends on context, judicial experience, and common sense. *Iqbal*, 556 U.S. at 679.

2. <u>The FCA's Public Disclosure Bar Requires Dismissal of this Case Because the Building Corporation Had Already Been Publicly Accused of the *Exact same Conduct* in the Media and In a Letter from Congress to the Small Business Administration</u>

The FCA's public disclosure bar ("PDB") requires dismissal of the amended complaint against the Building Corp. because more than two years before this complaint was filed, the exact same allegations of fraud alleged were widely disclosed in the media and in a letter from four members of the U.S. Congress.

a. <u>Overview of the PDB</u>

The FCA's public-disclosure bar requires dismissal when substantially the same allegations or transactions were publicly disclosed in: (1) a federal criminal, civil, or administrative hearing in which the Government or its agent was a party; (2) a congressional, Government Accountability Office, or other federal report, hearing, audit, or investigation; or (3) the news media. 31 U.S.C. § 3730(e)(4)(A). The First Circuit asks whether the alleged fraud was publicly disclosed, whether the disclosure came from an enumerated source, and whether the relator's allegations are substantially the same as the disclosed allegations or transactions. *U.S. ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 208 (1st Cir. 2016); *U.S. ex rel. Poteet v. Bahler Med., Inc.*, 619 F.3d 104, 109 (1st Cir. 2010). All three requirements must be met. *Id.*

Fraud is publicly disclosed when the essential elements revealing a transaction's fraudulent nature enter the public domain. A disclosure may allege fraud directly or reveal both the misrepresented facts and the true facts necessary to infer it. *Poteet*, 619 F.3d at 110 (citing *U.S. ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 54 (1st Cir. 2009)). Separate disclosures may be considered together; the question is whether they gave the Government fair notice of the potential fraud before suit was filed. *Winkelman*, 827 F.3d at 208–09; *Ondis*, 587 F.3d at 54. An action is "based upon" a prior disclosure when the relator's allegations are substantially similar to allegations or transactions already in the public domain at filing. *U.S. ex rel. Banigan v. PharMerica, Inc.*, 950 F.3d 134, 142–43 (1st Cir. 2020). Adding detail, examples, or affected programs does not avoid the bar when the complaint targets substantially the same disclosed conduct. *Winkelman*, 827 F.3d at 209–10; *Poteet*, 619 F.3d at 115.

If the bar applies, the action may proceed only if the Government opposes dismissal or the relator qualifies as an "original source." § 3730(e)(4)(A). An original source is an individual who either voluntarily provided the Government with the information underlying the claim before public disclosure, or has knowledge independent of and materially adding to the public disclosures and voluntarily provided that information to the Government before filing suit. § 3730(e)(4)(B). Information "materially adds" if it is significant or essential, or could influence the recipient's decision-making. Expertise, synthesis, or added detail drawn solely from public information is insufficient. *Winkelman*, 827 F.3d at 211–13; *Ondis*, 587 F.3d at 59–60.

b. <u>The Exact Same Allegations Were Disclosed Two Years Before Suit Was Filed</u>

In this case, the *exact same allegations* that Tarbell makes against the Building Corporation in this 2024 suit were publicized online in 2022. In a publication posted on February 2, 2022, an organization called the Freedom Foundation ("Foundation"), which describes itself

out as a member of the news media,[3] published a report on its website called: "Profiting from a Pandemic: How Ineligible Unions Collected Millions in Federal COVID Relief Funds." Mtn. for Judicial Notice ("MJN"), Req. 1.[4] In great detail, the report states that "The Freedom Foundation's review of the SBA's database of PPP loan recipients identified as many as 223 loans totaling $36.1 million that went to labor unions and affiliated organizations that were ineligible for the funds at the time their loans were approved…" MJN, Req. 2, pg. 4. The report stated that labor organizations, which are usually organized under Section 501(c)(5) of the Internal Revenue Code, were ineligible to receive PPP money that was technically only available to 501(c)(3)'s and 501(c)(19)'s. MJN Req. 2.

Of particular relevance here, the report identified as a problem "3 loans totaling $208,000 to union operated building corporations under § 501(c)(2) whose applications were approved prior to March 11, 2021." MJN, Req. 2, pg. 4 (emphasis added). Tarbell alleges that the Building Corp. is a 501(c)(2) that fraudulently received a PPP loan based on an application approved prior to March 11, 2021 (when the PPP program was explicitly extended to 501(c)(2)'s). FAC ¶¶ 4 and 130; and pg. 60.

The allegations raised in the Foundation's report specifically stated:

> The unions and affiliated organizations completing these loan applications could have: (1) checked a box falsely indicating they were an eligible entity; or, (2) selected "other." In the first instance, the applicant committed fraud; in the second, the lending institution

---

[3] Freedom Foundation, *Freedom Foundation Will Have a Chance to Prove It's a Member of the 'News Media,'* (March 30, 2022) https://www.freedomfoundation.com/press-release/freedom-foundation-will-have-a-chance-to-prove-its-a-member-of-the-news-media/ (last visited Oct. 14, 2026). On that webpage, the Foundation's litigation counsel is quoted as saying that the Foundation "publishes a monthly newsletter and two news magazines a year…[,] posts countless blogs to its website[.] produces numerous video messages[, and] gathers and disseminates information by every allowable form of communication. The Freedom Foundation meets or exceeds every standard for a member of the news media[.]" *Id.* Moreover, review of the Foundation website clarifies that this is clearly a media source as contemplated by the FCA. And, as noted below, the Foundation's research was the subject of reporting on the Newsmax TV network.

[4] The Building Corp. has this day also filed a Motion for Judicial Notice so that the Court can take judicial notice that these allegations were publicly disclosed more than two years before this suit was filed.

> and/or SBA did not detect, or detected but did not care about, the applicant's ineligibility."
>
> Even checking the "other" box may not have saved an ineligible applicant from committing fraud, as the forms also required applicants to certify their "...[eligibility] to receive a loan under the rules in effect at the time this application is submitted" and "... that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

MJN Req. 2, pg. 6 (emphasis added).

On the main page, where readers could click to "Read the full report," readers were also invited to "Download the complete list of ineligible/suspect loans." *Id.* If one downloads that list, one obtains an Excel spreadsheet of PPP loans. MJN Req. 3. The sixth loan listed (out of 223) is the exact loan taken by the Defendant Building Corp that is the subject of this suit. *Id.*[5] Every single piece of information listed in the spreadsheet attached to the amended complaint appears in this reporting. Dock. 24, pg. 60. The cell identifying the Building Corp. as a 501(c)(2) includes a link to an IRS website showing the Building Corp.'s 2020 Form 990, which confirms the Building Corp.'s status as a 501(c)(2). With regard to the Building Corporation, there is *nothing* in Tarbell's suit that was not in the Foundation's reporting two years earlier.

The Foundation report was not buried in the deep recesses of the Internet. If you click the link "Paycheck Protection Program" at the bottom of the main page of the report, you get additional reporting stating that "Citing Freedom Foundation research, the GOP leaders of four committees in the U.S. House of Representatives last week sent a letter to the head of the Small Business Administration (SBA) seeking information about how labor unions were able to receive forgivable loans through the Paycheck Protection Program (PPP) for which they were ineligible." MJN Req. 4. That article linked to a Congressional press release dated April 6, 2022, and

[5] Note: the yellow highlighting was added for the convenience of the reader. The spreadsheet was not otherwise altered.

maintained on the official house.gov website and which was about the exact issues stated in the Foundation report. MJN Req. 5. In turn, that page links to a letter the Congressional Republicans sent to the Small Business Administration, which in turn specifically cites the Foundation report. MJN Req. 6. Thus, the report claiming that "3 loans totaling $208,000 to union operated building corporations under § 501(c)(2) whose applications were approved prior to March 11, 2021" were wrongly obtained was not only in the media, but in the hands of members of Congress, who in turn put it into the hands of the SBA. MJN, Req. 2, pg. 4.

Further reporting by the Foundation states that its "research garnered widespread media coverage and received congressional attention." MJN Req. 7. Their reporting indicated that this report was submitted directly to the Small Business Administration ("SBA"), which was the federal agency that administered the PPP. *Id.* The reporting includes documents obtained through the Freedom of Information Act, which confirms that the SBA received the Foundation report but evidently took no action. MJN Reqs. 7-9.

The *Washington Free Beacon* on February 2, 2022, published an article trumpeting the Foundation's report, stating that it demonstrated that unions and union-affiliated entities were approved for PPP loans in early 2020 even though "only nonprofits that were registered as 501(c)(3) charitable organizations were eligible for the loans." MJN Req. 10. The article further stated that the Foundation's report showed that PPP loans "were given to <u>union-affiliated</u> organizations registered as other ineligible tax statuses," such as the Building Corp. *Id.* (emphasis added). In an appearance on the Newsmax network (posted on YouTube on February 15, 2022), Maxford Nelsen of the Foundation further explained the Foundation's report, stating that unions and affiliated entities were able to receive PPP funding "probably because there was

fraudulent information submitted on the applications."[6] Mr. Nelsen also noted that he submitted the Foundation's findings to the SBA's inspector general and the United States Department of Justice. *Id.* at 3:08.[7]

In short, the reporting from the Foundation is media reporting and the letter from Congress relying on the Foundation report is a government report. *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 407–11 (2011) (answers to FOIA requests qualify as government reports, relying a broad definition of "report"). Because the allegations are identical, the Court's analysis need not be searching. And, of course, Tarbell's complaint used the exact same methodology as the Foundation.[8]

3. <u>Tarbell Fails to Adequately Plead Scienter</u>

An FCA plaintiff must sufficiently allege actual knowledge, deliberate ignorance, or reckless disregard of a statement's truth or falsity. *U.S. ex rel. Martino-Fleming v. S. Bay Mental Health Centers*, No. 15-CV-13065-PBS, 2021 WL 2003016 (D. Mass. May 19, 2021) (citing 31 U.S.C. § 3729(b)(1)). Honest mistakes and mere negligence do not suffice. *U.S. ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998) (quoting S. Rep. No. 99–345, at 7 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5272). Scienter turns on the defendant's actual knowledge and beliefs. *U.S. ex rel. Nunnelly v. Regeneron Pharms., Inc.*, 780 F. Supp. 3d 336, 347 (D. Mass. 2025) (citing *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749 (2023)).

---

[6] YouTube, *Max Nelsen live on Newsmax to discuss labor unions receiving $36.7 Million in PPP Loan Fraud*, at 2:02 (Feb. 15, 2022) https://www.youtube.com/watch?v=VqRe6XtfifE&t=119s/ (last visited Oct. 14, 2026).

[7] The Foundation similarly published documents received from a Freedom of Information Act request showing that White House officials were aware in *2020* that unions received PPP loans before they were eligible. MJN. Reqs. 7-9.

[8] Even if the Building Corporation had not been listed in the Foundation's spreadsheet in 2022, the Foundation's reporting would still provide a valid PDB defense because all of the elements of the alleged fraud were reported. One need only look at the list of nonprofits receiving loans on the one hand (as the Foundation's report described) and cross-reference their 501(c) status with the IRS on the other. This is enough to satisfy the PDB burden in the First Circuit, which requires only that the government has received "fair notice, prior to the suit, about the potential existence of the fraud." *Winkelman*, 827 F.3d 201, at 208–09. The Foundation report and is detailed explanation of its methodology clearly disclosed the situation, not just publicly but to the federal government itself.

Although knowledge may be alleged generally per Fed. R. Civ. P. 9(b), conclusory assertions nonetheless still require support from pleaded facts and reasonable inferences. *U.S. v. Exagen, Inc.*, No. 21-CV-10950-ADB, 2025 WL 959460, at *9 (D. Mass. Mar. 31, 2025); *U.S. v. Gainwell Techs. LLC*, No. CV 22-10953-LTS, 2026 WL 1864033, at *7 (D. Mass. June 29, 2026). Tarbell supplies no such facts concerning the Building Corp. Instead, it asserts collectively that each defendant knew its certification was false, but does so without pointing to any facts supporting this otherwise conclusory allegation. FAC ¶ 148.

The loan application certified eligibility under the SBA's "rules in effect at the time this application is submitted." FAC ¶ 145. The forgiveness application certified that the application and supporting documents were "true and correct in all material respects" and warned that the SBA could deny forgiveness if it found the borrower ineligible. FAC ¶¶ 166-67. The quoted forgiveness provisions did not separately certify eligibility. These provisions do not explain if, how or why the Building Corp. knew, deliberately ignored, or recklessly disregarded that its certifications were false.

The FAC also identifies no facts showing that the Building Corp. had notice that § 501(c)(2) entities were ineligible, knew the applicable restrictions, or disregarded information suggesting ineligibility. Its only individualized allegations identify the Building Corp.'s nonprofit status, address, loan number, approval date, and forgiveness date and amount. FAC ¶ 116; FAC pg. 60. These facts do not explain what the Building Corp. knew when it applied for the loan or forgiveness.

The SBA's evolving guidance underscores the need for specific allegations about the Building Corp.'s understanding of eligibility. Its inspector general reported that the SBA issued 20 interim rules concerning eligibility, loan terms, and forgiveness between April 2 and June 25,

2020, and that approximately 75 percent of responding lenders found the initial guidance unclear or untimely. SBA Office of Inspector General, Report 21-07, *Inspection of SBA's Implementation of the Paycheck Protection Program*, p. 15 (Jan. 14, 2021).[9] Tarbell alleges no facts connecting the Building Corp. to knowledge of the relevant eligibility restriction amid that guidance.

Courts have dismissed similar PPP claims lacking factual allegations of scienter. *See U.S. v. Baxter*, No. 23-CV-00336-WHO, 2025 WL 1343076, at *6 (N.D. Cal. May 8, 2025) (finding no facts showing individual defendants' knowledge despite general PPP background allegations) (citing *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006)); *U.S. v. Ilink Emps. Co.*, No. 5:22-CV-01004-RGK-DTB, 2026 WL 2466421, at *4 (C.D. Cal. Jan. 13, 2026) (dismissing a claim because the relator did "not address how Defendants knew or should have known their statements were false when they were submitting their PPP applications").

The court may also rely on its "common sense." *Iqbal*, 556 U.S. at 679. When the SBA first began advertising the PPP loans, the SBA broadly advised the public, as one example, that "All businesses – <u>including nonprofits</u>, veterans organizations, Tribal business concerns, sole proprietorships, self-employed individuals, and independent contractors – with 500 or fewer employees can apply." MJN Req. 11. This SBA guidance did not differentiate between different types of 501(c)'s, instead using the catchall term "nonprofits." In addition, the SBA had been clear that funds were limited and that loans would be granted on a first-come/first-serve basis, which in a time of crisis meant that entities should hurry to apply.[10] The Court should hardly be surprised that the combination of an unprecedented public health crisis, general SBA guidance that broadly announced eligibility to "nonprofits," and a rush to apply would lead numerous

---

[9] https://legacy.sba.gov/document/report-21-07-inspection-sbas-implementation-paycheck-protection-program (last visited Oct. 14, 2026).
[10] See, e.g., https://www.proskauer.com/alert/first-come-first-serve-paycheck-protection-program-launched-today (last visited October 14, 2026).

nonprofits to misapprehend the initial technical limitation of PPP funding to only 501(c)(3)'s and 501(c)(19)'s. This collective error – shared by these 119 nonprofit defendants and given Tarbell's lawsuits in several other jurisdictions, many others nationally[11] – is a far more logical explanation than Tarbell's generic assumption that dozens of otherwise reputable nonprofits across the Commonwealth committed fraud to obtain these funds.

Naming more than one hundred diverse nonprofits should not obscure the absence of facts about the Building Corp.'s state of mind, particularly since the FCA does not reach every regulatory violation. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 194 (2016). Certainly, obtaining money one is not entitled to is consistent with fraud, but hardly dispositive. And in terms of a motion under Rule 12(b)(6), "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678. Without facts supporting a reasonable inference that the Building Corp. knowingly submitted false certifications, Tarbell fails to adequately plead scienter.

4. Tarbell Also Fails to Adequately Plead Materiality

The FCA's demanding materiality standard requires facts plausibly pleaded with particularity showing that the alleged misrepresentation could influence the government's payment decision. *Guilfoile v. Shields*, 913 F.3d 178, 187 (1st Cir. 2019) (quoting *Escobar*, 579 U.S. at 195 n.6). Designating a requirement as a condition of payment does not alone establish materiality; indeed, the government's continued payment despite actual knowledge of noncompliance is strong evidence against it. *Escobar*, 579 U.S. at 195.

[11] A search in PACER indicates that The Tarbell Group has filed a total of 24 similar lawsuits in 11 jurisdictions.

The SBA received warnings about nonprofit eligibility in 2020 and 2022. FOIA emails show that, on July 15, 2020, James Sherk of the White House Domestic Policy Council informed SBA Deputy Chief of Staff Christopher Gray of apparently improper PPP loans and attached a spreadsheet identifying apparently ineligible union borrowers. MJN Req. 8. Gray replied the next day that he would direct the concerns to the appropriate SBA staff. *Id*. Despite the 2020 warning, the SBA forgave the Building Corp.'s loan in December 2020. FAC pg. 60. In 2022, members of Congress alerted the SBA to the Foundation's reporting on nonprofit ineligibility, which included reference to union building corporations. MJN Reqs. 5-6. The SBA nevertheless did not seek recoupment of the Building Corp.'s loan, or take any other action. This response supports the Building Corp.'s materiality argument, and helps illustrate what is missing from the FAC.

The Building Corp.'s tax classification, like those of the other nonprofit defendants, was also publicly available through the IRS Tax Exempt Organization Search.[12] The SBA nevertheless approved and forgave their loans. Together with the warnings, that treatment further weighs against materiality. *Escobar*, 579 U.S. at 195; *see also U.S. ex rel. Animal Legal Def. Fund v. Holden Farms, Inc.*, No. CV 21-2061 (JRT/DJF), 2024 WL 2728451, at *5 (D. Minn. May 24, 2024) (finding a PPP compliance certification immaterial in part because the government disbursed nearly $800 billion despite foreseeable violations and minimal oversight).

5. Any Reverse FCA Claim Duplicates the Other Claims

To the extent Count 4 asserts a reverse FCA claim under 31 U.S.C. § 3729(a)(1)(G), it rests on the same eligibility certifications underlying Tarbell's presentment and false-statement claims. Reverse FCA liability cannot rest solely on the conduct supporting those claims. *U.S. ex rel. Stonebrook v. Merck KGaA, Darmstadt, Germany*, No. 21-CV-10866-DJC, 2024 WL

---

[12] IRS, *Tax Exempt Organization Search*, https://www.irs.gov/charities-non-profits/tax-exempt-organization-search (last visited Oct. 14, 2026).

1142702, at *11 (D. Mass. Mar. 15, 2024) (quoting *U.S. ex rel. Martino-Fleming v. S. Bay Mental Health Ctr., Inc.*, No. CV 15-13065-PBS, 2018 WL 4539684, at *6 (D. Mass. Sept. 21, 2018)). Any reverse FCA claim should therefore be dismissed.

IV. Conclusion

For the above-stated reasons, the Court should dismiss the amended complaint against the Building Corporation pursuant to Fed. R. Civ. P. 12(b)(5) and (6).

Respectfully submitted,

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS BUILDING CORPORATION

By its attorney,

James A.W. Shaw, BBO # 670993
SEGAL ROITMAN, LLP
33 Harrison Ave., 7th Floor
Boston, MA 02111
(617) 504-8774
jshaw@segalroitman.com

Dated: October 14, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on October 14, 2026.

James A.W. Shaw